## Leidy Estate

*Waters, Fleer, Cooper and Gallager,* by *Stanley B. Cooper,* and *Pepper, Hamilton and Sheetz,* by *Holbrook M. Bunting,* for accountants.

*High, Swartz, Roberts and Seidel,* by *Victor J. Roberts; Dechert, Price* and *Rhoads,* by *Minturn T. Wright, 3rd, and Philip Price; Smith, Aker, Grossman and Hollinger* by *M. Paul Smith;* and *Schnader, Harrison, Segal and Lewis* by *J. Pennington Straus and Robert P. Oberly,* for legatees.

TAXIS, P. J., March 29, 1965.—. . . Decedent died on February 9, 1933. She created the present trust by provisions of paragraphs eighth and tenth of her will. The reason or purpose for the filing of the present account is the death on February 23, 1964, of one of decedent's sons, Philip Ludwell Leidy, who was one of the trustees as well as an income beneficiary. By

the said will, each of decedent's three children was given a share of and certain other interests in the income from this trust, and with the death of Philip Ludwell Leidy a problem has arisen regarding the future recipients of his share of the income.

In paragraph eighth of her will, decedent creates this trust for the period of her children's lives, and then directs her trustees ". . . to divide the net income quarterly into as many parts or shares as at each time of quarterly distribution there shall be children of mine then living and children of mine then dead represented by descendants then living, and to sub-divide the share falling at each of said times to each set of descendants of a child of mine then dead, amongst them per stirpes, . . ."

"This direction to pay over to any set of descendants of a child of mine who may be dead at a time of quarterly distribution, is subject to the power in any child of mine who may then be dead, by its last Will and Testament, to make a distribution of the income thus directed to be paid to its descendants in such way and manner as it shall see fit. The power to appoint shall extend to the debarring of any descendants from a share in toto. Excepting that if any child of mine shall die without leaving issue, the share over which he or she would have power of appointment for said issue, children or descendants, shall be lost to him or her and the share of said child of mine so dying without issue, children or descendants shall be divided equally among the remaining living children of mine, or their descendants . . ."

Decedent was survived by three children. Cornelia Leidy Cheston was born in 1895, married in 1917 and has had no children. Philip Ludwell Leidy was born in 1897, was married four times and likewise had no children. His final marriage, to Sherod Whitney, occurred in 1947 and was ended by his death.

Decedent's third child, Carter Randolph Leidy, was born in 1902 and died in 1954, having been married three times. His first marriage was to Josephine P. Widener, and their issue is Joan Leidy Ray. The second marriage was to Marjorie Procter, and from this were born Joseph Leidy, IV, and Phyllis Leidy Palsgrove. The third marriage was to Marcia G. Bouchard, and there were born to this marriage Carter Randolph Leidy, Jr. and Robert Peale Polk Leidy.

In paragraph fourth of his last will, Carter Randolph Leidy provided as follows:

"Exercising the power of appointment therein and thereby given to me, I direct that so much of the income of the trust as I may have power to dispose of at the time of my death under Article Eighth of the Last Will and Testament of my mother, . . . shall be payable, so long as the said trust created in and by the terms of my said mother's Last Will and Testament shall exist, in full, to the children and the issue of any deceased child then living of my marriage to Maria G. Leidy, in equal shares per stirpes, and not per capita."

In paragraph eighth, he continued:

"In the making of this, my Last Will and Testament, I have continually kept in mind the present and prospective financial conditions of my respective children. The respective provisions that I have made herein for my various children emanate from a knowledge of their said respective conditions and not from any desire to discriminate against any of them, and I make this, my Last Will and Testament, confident that my living children will so interpret my motives."

Under Mrs. Leidy's will, the death of her son Philip without children or descendants causes the income formerly payable to him to go one-half to his older sister, Cornelia Leidy Cheston, and one-half to the children of his brother, Carter Randolph Leidy.

Carter Randolph Leidy, Jr., and Robert Peale Polk

Leidy, the children of Carter Randolph Leidy by Maria G. Bouchard Leidy, claim this latter one half by virtue of the appointive provisions of their father's will. On the other hand, Joseph Leidy, IV, and Phyllis Leidy Palsgrove contend that their father was given no power of appointment over this additional income, and, even if he was, the language he used in his will negates any intention to exercise the power. Joan Leidy Ray, whose interest parallels that of Joseph Leidy, IV, and Phyllis Leidy Palsgrove, has not taken any part in the litigation over the income.

Some additional facts have also been stipulated. As of October 4, 1943, the date of the last will of Carter Randolph Leidy, his daughter by Josephine P. Widener had prospects of receiving a substantial inheritance from the Widener family, and was married to a man wealthy in his own right. The children of his second marriage had prospects of substantial inheritances from their maternal grandmother. The children of his third marriage, however, in whose favor he executed his power of appointment, had no prospects of any inheritance except through their father.

Two basic issues are before me: (1) Did Carter Randolph Leidy have the right and power, under his mother's will, to appoint the disputed share of income and (2) if so, did the language in his will effectively do so?

Mrs. Leidy created the income interests here under consideration in a somewhat unusual fashion. For the duration of the trust, she first gave its income per stirpes to her children and their descendants, which, in form, was an absolute and vested gift. This was immediately qualified, however, by the creation of a power in any child of hers ". . . by its last Will and Testament to make a distribution of the income thus directed to be laid to its descendants in such way and manner as it shall see fit". This, in effect, divested the

gift to descendants in case of the exercise of the power. Finally, any child of decedent who died without issue lost his or her power of appointment, ". . . and the share of said child of mine . . . shall be divided equally among the remaining living children of mine, or their descendants".

From this language, counsel for the children of Marjorie Procter argues that the income formerly paid to Philip Ludwell Leidy, who died without issue, goes directly under the terms of his mother's will to his sister, Cornelia L. Cheston, and to *all* of the children of Carter Randolph Leidy. Counsel for the children of Maria G. Bouchard argues, however, that the exercise of the power of appointment by Carter Randolph Leidy extends also to this newly acquired share of income and that the same should be paid entirely to them.

The issue created by decedent's language is close, and probably cannot be resolved in such a way as to be completely free of doubt. By reading the will as a whole, however, the most reasonable interpretation of Mrs. Leidy's words may be discerned. Initially, testatrix provided that the income should be divided ". . . into as many parts or shares as . . . there shall be children of mine then living and children of mine then dead represented by descendants then living . . ." While it is likely that she assumed that an initial division into thirds would occur, to be followed, if necessary, by subdivisions of each of these thirds, her language is much broader than this and clearly authorizes distribution to "descendants" in any proportion which her testamentary plan required. In reference to the facts as they have now developed, she has directed, in effect, that the income from her estate now be divided into two parts, one for her child still living, and the other for the descendants of her one child who died leaving such. Thus, when she fol-

lows this language by the grant of a power in any child of hers to control or vary the distribution of the income ". . . thus directed to be paid to its descendants . . .", no inconsistency with the prior language appears, nor can any inference be fairly drawn that the latter clause limits the size or share of the estate which can pass by the exercise of the power.

Nor does any inconsistency appear from the ensuing provision, which states that ". . . the share of said child of mine so dying without issue, children or descendants shall be divided equally among the remaining living children of mine, or their descendants". The most reasonable view of this language is that it stems logically from testatrix' limitation of the powers of appointment to her children's "descendants"; obviously, a child dying without descendants has nothing to exercise, and something must be done with his share of the trust income. Whether such income passes to a child's descendants directly, or through the operation of the child's will, it passes, nevertheless, to his "descendants", which is all that Mrs. Leidy requires. It would be unjustifiable to hold that by the aforementioned general language testatrix, in one special situation only, meant to ignore or pass by her child's power of appointment. Likewise, the word "equally" may be said to introduce ambiguity, but it would be no more apt to construe it to require equality among all "descendants", as here contended by the children of Marjorie Procter, than to hold that it refers only to testatrix' basic plan of equal division between her children, which is its more likely significance.

It appears, therefore, that testatrix has expressed no clear intent that her children's powers of appointment not apply where the share of income to which they relate increases. In addition, it is manifest that Mrs. Leidy considered that her children would be better informed as to the best and fairest disposition to

be made of her estate than was she, anticipating that the needs of her grandchildren would be better defined at the death of their respective parents than at the time of hers. Based on this consideration, it would be illogical to exclude a relatively small portion of the income from the operation of her well-considered testamentary plan, without a clear and affirmative expression of intent to do so. Cf. Willing Estate, 18 D. & C. 2d 11, which is a case involving considerations quite similar to the present ones.

Moreover, another problem arises if this portion of the income is excluded from the operation of the power of appointment. As pointed out in the brief filed on behalf of Carter Randolph Leidy, Jr., and Robert Peale Polk Leidy, the confinement of the power of appointment to the fraction of income received by a child during life would render the extent of its effect dependent on the order of the death of the Leidy children. But order of death is "merely gratuitious" (March Estate, 357 Pa. 216), and nothing appears in testatrix' will to indicate that she wished such order to play any part in the disposition of her estate. In turn, any attempt to avoid this problem by limiting the reach of each child's power of appointment to his initial one-third share of the trust runs afoul of specific testamentary language, which creates a power to distribute all ". . . income thus directed to be paid to its descendants . . ." Indeed, this expression refutes not only the latter argument, but strongly supports the conclusion that the income payable to the descendants of any child under the exercise of his power was regarded by testatrix as a variable and not a fixed amount or share. Therefore, I hold that Carter Randolph Leidy had the right and power, under his mother's will, to appoint the share of income formerly payable to Philip Ludwell Leidy to his descendants by his last will.

The second issue is more easily disposed of. Mr. Leidy appointed ". . . so much of the income . . . as I may have power to dispose of at the time of my death . . ." Had he meant only to dispose of so much of the income as he was receiving at his death, he could have said so; and it would be unthinkable to engraft such a meaning on the plain language that he used, where all of the surrounding circumstances in the case indicate a contrary intention. Counsel for the children of Marjorie Procter argue that nothing in Mr. Leidy's will indicates that he assumed to have any right to appoint income which might accrue after his death, but this plainly is not so, for neither party refutes his right for the duration of the trust to appoint future accruals of the share of income which he was receiving at his death. In addition, no case has been herein cited which requires the donee of a power of appointment, in exercising it, to be specifically aware of the kind, sort or size of the estates which he is appointing; a clearly expressed intent to exercise the power has always been held sufficient to do so. See Lippincott's Estate, 52 D. & C. 273. Thus, it is irrelevant here to consider the assumptions or expectations that may in some way be gleaned from the balance of Mr. Leidy's testamentary language, which are argued at some length by counsel for the children of Marjorie Procter.

If further clarification were sought, it appears in Mr. Leidy's detailed explanation in article eighth of his will of his reasons for preferring two of his children over the other three. Mr. Leidy went to considerable length to benefit two of his five children and to explain to all of them why he did so. Nowhere does he signify any intention to change this plan simply because his brother or sister died without issue. Indeed, the likelihood of this occurrence was substantial in 1943, when his will was drawn, and increased up to the time of his death; if he desired to distinguish be-

tween the two shares of income, he had ample opportunity to do so, and his silence on the matter is as plain as an affirmative statement. I, accordingly, conclude that the share of income in question is distributable under the provisions of the last will and testament of Carter Randolph Leidy, exercising the power of appointment granted to him by decedent . . .

And now, March 29, 1965, this adjudication is confirmed nisi.